## 52417. HOPKINS et al. v. KEMP MOTOR SALES, INC.

WEBB, Judge.

Mark Hopkins, a partner of Rutledge Used Cars, on June 4, 1975 purchased for the firm from William Kenneth Collum a 1969 Grand Prix automobile. Hopkins had during the day inspected the vehicle, noted it was in poor condition, that the brakes were out, the car was dirty, the tires were completely worn out, and new hubs were needed. He estimated to Collum its current wholesale market value to be $750 if the car was "cleaned up," but said he would pay $500 for the car in its then condition. That evening Collum brought the car to Hopkins' home, said he was "in a tight for money," and gave to Hopkins his motor vehicle title certificate. The certificate was in proper form showing no lienholder of record having a security interest in the car, and Hopkins paid him $500 cash.

The used car dealer spent approximately $200 repairing the vehicle, and on June 14, 1975 traded it to Steve Manning for $1,495, accepting as a trade-in Manning's 1969 Chevrolet Impala and a check for $618 to be presented for payment on Monday, June 16. While Manning was completing his financial arrangements at Commercial National Bank in Cedartown, an employee of Kemp Motor Sales told him there was a lien against the 1969 Grand Prix in favor of First National Bank of Polk County. Subsequently Manning released the car to Kemp Motor Sales to whose lot it was removed and where it remained, stopped payment on his check to Hopkins and retrieved the Impala he had traded.

Hopkins and Kirby Rutledge filed an action against Kemp Motor Sales for return of personal property. Kemp answered and filed a petition against Hopkins and Rutledge, and against William Kenneth Collum to revoke the certificate of title. The two petitions were consolidated

and a non-jury hearing was held.

Hopkins testified that he first learned of the lien claimed for First National Bank of Polk County when his purchaser was making his own financing arrangement. He said he made no inquiry of Collum, his vendor, concerning possible lienholders as to the 1969 Grand Prix automobile, and that it was not customary to make such inquiries when the certificate of title to the vehicle showed no lienholders. He further swore by affidavit that he considered $500 to be an average wholesale price for the 1969 Grand Prix car in its condition at the time he purchased it.

Kemp in his testimony expressed the opinion as a wholesale car buyer that it would be customary to inquire as to the possibility of liens on this vehicle where the wholesale price seemed inadequately low, and that he felt the wholesale value of the car was approximately $950. His testimony did not reflect whether he took into consideration the condition of the car as Hopkins described it at the time of purchase.

The certificate of title delivered to Hopkins by Collum showed him as owner with no lienholders. Kemp testified that when he sold a 1969 Grand Prix auto to Collum on March 12, 1975, it was financed with First National Bank of Polk County, with recourse, that there was a conditional sales contract, that he handed Collum a properly filled out MV-1 form showing the bank as lienholder to take to the tag office in Polk County to transfer the tag and title, and that such a procedure as to tag and title was customary in Cedartown.

Collum as a witness for Kemp testified that he did not tell Hopkins, his purchaser, that there was a lien against the car, that he lost the MV-1 form that Kemp prepared, and that he had another form prepared which did not show any lien interest outstanding.

Kemp filed its motion for summary judgment, the trial court granted the motion, and entered judgment. In so doing the court ruled as a matter of law that:

(1) Hopkins was not a bona fide purchaser for value of the 1969 Grand Prix automobile.

(2) Kemp's method of perfecting its security interest by allowing its purchaser, Collum, to see that the form

would be properly sent to the Motor Vehicle Registration Unit, was proper in Cedartown.

(3) Hopkins was under a duty to inquire as to possible lienholders of record against the 1969 Grand Prix automobile.

(4) "The security interest of Kemp Motor Sales, Inc. and First National Bank of Polk County is an interest to be recognized, and as Collum is a party to this suit the Motor Vehicle Registration Division is hereby directed to issue another Certificate of Title showing the Bank as Security Holder."

It is from this judgment that Hopkins and Rutledge appeal.

This vehicle was one on which a certificate of title is required under the Motor Vehicle Certificate of Title Act. Code Ann. § 68-406a. A lien thereon to be valid against subsequent transferees shall be perfected by compliance with the provisions of the Title Act, and the procedures contained therein "shall be the exclusive method for the perfection of liens on vehicles, and no lien shall be effective as to a vehicle unless so perfected." Code Ann. § 68-421a (a), (c (3) and (5)) (Ga. L. 1961, pp. 68, 83 as amended by Ga. L. 1969, pp. 92, 93).

Although the holder of a security interest may fail to comply with the provisions of the Motor Vehicle Certificate of Title Act relating to the perfection of a security interest, "[i]t is well settled under the recording statutes that *actual* notice of the prior lien to one who subsequently purchases or acquires a security interest is sufficient to preserve the priority of the lien, or of title." *Franklin Finance Co. v. Strother Ford, Inc.,* 110 Ga. App. 365, 368 (1) (138 SE2d 679) (Emphasis supplied.)

Knowledge of a fact is defined in the Uniform Commercial Code as actual knowledge. A person has "notice" of a fact when he has actual knowledge, or from all the facts and circumstances known to him at the time in question he has reason to know that it exists. Code Ann. § 109A-1—201 (25). There is nothing in the testimony to indicate that Hopkins had *any* knowledge that either First National Bank of Polk County or Kemp held a lien on or a security interest in the automobile. The security interest of the bank was not perfected by

procedures relating to certificates of title of motor vehicles or otherwise (see Code Ann. §§ 109A-9—103 (4); 109A-9—302 (1) (d), (3) (b), (4); Code Ann. Ch. 68-4A; *Staley v. Phelen Finance Corp.*, 116 Ga. App. 1 (156 SE2d 201)), and it does not appear that Hopkins had knowledge of the bank's security interest (see Code Ann. § 109A-9—301(1)(b), (3); Code Ann. § 8-905; *Franklin Finance Co. v. Strother Ford, Inc.*, 110 Ga. App. 365, supra). Thus it would appear that Hopkins was a bona fide purchaser, and his title superior to the claims of the bank and Kemp.

Kemp contended, however, that the purchase price paid by Hopkins, $500, was so low as compared to his estimate of a wholesale value of $950, as to put Hopkins upon inquiry and therefore he was not a bona fide purchaser. While inadequacy of price may be considered along with other circumstances whether a purchaser had or should have had notice sufficient to put him upon inquiry, inadequacy alone is rarely held sufficient to constitute such notice unless the price paid is merely nominal or absurdly low. 77 CJS 1090, Sales, § 289 f.(4).

It is our conclusion that the able trial judge erred in ruling as a matter of law that Hopkins was not a bona fide purchaser for value. So holding, it is not necessary to pass on the other enumerations of error.

*Judgment reversed. Deen, P. J., and Quillian, J., concur.*

SUBMITTED JULY 14, 1976 — DECIDED SEPTEMBER 7, 1976.

*York & Cummings, Michael D. McRae,* for appellants.

*T. Peter O'Callaghan, Jr.,* for appellee.